IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SHARON NOBREGA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20-cv-105 (LMB/IDD) |
| ) | |
| PIEDMONT AIRLINES, INC., ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

Before the Court is defendant Piedmont Airlines, Inc. ("defendant" or "Piedmont")'s Motion for Summary Judgment ("Motion") [Dkt. No. 33]. Pro se[1] plaintiff Sharon Nobrega ("plaintiff" or "Nobrega") has filed claims against defendant alleging that defendant's termination of her employment was discriminatorily motivated based on her race (Counts I, IV) and national origin (Count II, IV) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and age (Counts III, V) in violation of the Age Discrimination in Employment Act ("ADEA").[2] Plaintiff's complaint arises from Piedmont's rescission of its offer to plaintiff to work as a ramp agent at Ronald Reagan Washington National Airport ("DCA") upon learning that American Airlines, Inc. ("American"), Piedmont's parent company and Nobrega's previous employer, terminated her for violating its Work Environment Policy and Rules of Conduct.

---

[1] Plaintiff had counsel from the filing of this lawsuit until November 4, 2020, on which date her counsel filed a Motion to Withdraw which the Court granted. Per the Scheduling Order [Dkt. No. 22], discovery closed on November 13, 2020. Accordingly, plaintiff had counsel throughout the majority of the discovery period.

[2] In her Amended Complaint, plaintiff brings five counts against Piedmont. Because termination is the only adverse employment action at issue in this lawsuit, Counts IV and V are duplicative of Counts I, II and III.

I. BACKGROUND

A. **Factual Background**

Nobrega, who is 52 years old, was born in Georgetown, Guyana, is of mixed-race heritage, and identifies as Black. [Dkt. No. 34-2], Nobrega Dep., at 6:12-7:8. American employed Nobrega as a customer service agent from 2006 to January 17, 2019. Id. at 49:22-50:15. Plaintiff's termination from American was the subject of another lawsuit brought by plaintiff in this district, Nobrega v. American Airlines, Inc., 1:20-cv-44 (AJT/MSN), in which she claimed that her termination by American was based on racial, national origin, and age-based animus. On December 21, 2020, Judge Anthony Trenga granted American's Motion for Summary Judgment. [Dkt. No. 28]. Plaintiff has filed an appeal. In his ruling on American's Motion for Summary Judgment, Judge Trenga found that "[b]etween June 30, 2008 and July 6, 2013, nine different managers issued written counseling or discipline to Nobrega on a dozen different occasions in response to customer and coworker complaints that she was rude, confrontational, and unprofessional to passengers and colleagues alike." Nobrega v. American Airlines, Inc., 1:20-cv-44 (AJT/MSN) [Dkt. No. 28] at 4.³ "On August 14, 2013, Nobrega, her union, and [American] executed a Last Chance Agreement, in which both Nobrega and her union acknowledged that the Company then had just cause to terminate Nobrega's employment," but American gave her one last opportunity to comply with American's policies. Id. Nobrega received three other disciplinary notifications after the Last Chance Agreement but was not terminated. Id. at 4–5.

---

³ "[A] court may properly take judicial notice of 'matters of public record,'" Goldfarb v. Mayor & City Council of Baltimore, 791 F.3d 500, 508 (4th Cir. 2015) (citing Federal Rule of Evidence 201), which would include Judge Trenga's December 21, 2020 Order in 1:20-cv-44. See, e.g., Mitchell v. Henderson, 128 F. Supp. 2d 298, 301 (D. Md. 2001).

2

On December 19, 2018, Nobrega was involved in a heated dispute with an employee of one of American's vendors in the DCA parking lot. [Dkt. No. 34-2], Nobrega Dep., at 145:20. The dispute occurred when a dark-skinned male "stole" a parking spot for which Nobrega had been waiting. Id. at 138:21-140:17, 142:8-13. During this argument, Nobrega told him that "this is America, not Africa" and retorted "your sister and mother too" after the man called her a "crazy f-ing bitch." Id. at 140:14-141:15. Nobrega and the man each filed a police report. [Dkt. No. 34-3], Schramm-Strosser Decl. ¶ 2, Ex. 1.[4] Nobrega was placed on leave pending investigation, and ultimately notified that she was terminated for violating American's Work Environment Policy, specifically the portion that states:

> Types of unacceptable behavior in the workplace may take a variety of forms, including verbal, physical, and visual contact, threats, demands, and retaliation for making a complaint. Examples may include, but are not limited to:
>
> Bias-related behavior – behavior that suggest hatred for, or hostility toward, a person or group because of their race, sex, sexual orientation, gender identity, religion, or protected characteristic. This may include, but is not limited to, bigoted slurs, drawings, and symbols such as a hangman's noose, a swastika, or graffiti.
>
> Verbal conduct, such as epithets, demeaning or derogatory comments, jokes, negative stereotyping, slurs or any term or code name that denigrates or disparages others, including but not limited to any member of a minority, racial, or ethnic group.

[Dkt. No. 34-3], Schramm-Strosser Decl. ¶ 2, Ex. 2. American also concluded that Nobrega's conduct violated its Rules of Conduct, which provides that:

> Behavior that violates the Company's Work Environment Policy, even if intended as a joke, is absolutely prohibited and may be grounds for severe corrective action, up to and including termination of employment. This includes, but is not limited to, threatening,

---

[4] American learned of the incident when one of its managers received a complaint later that day from an American vendor, stating that Nobrega had been abusive to one of the vendor's employees. The vendor's email provided a copy of the police report filed by the vendor's employee, in which he stated that Nobrega slapped his face, told him "I hate you African people," and threatened to kill him the next time she saw him. Nobrega v. American Airlines, Inc., 1:20-cv-44 (AJT/MSN) [Dkt. No. 28] at 6. It also included a picture of the employee's face showing a red swollen area below his left eye. Id.

3

> intimidating, interfering with, or abusive, demeaning, or violent behavior toward another team member, contractor, customer, or vendor, while on or off duty.

Id. American terminated plaintiff's employment effective January 17, 2019. Id.

On or about February 27, 2019, Nobrega applied to Piedmont for a position as a Ramp Agent at DCA through an online posting. [Dkt. No. 34-2], Nobrega Dep., at 64:11-16, 65:17-67:8. Piedmont is a wholly owned subsidiary of American and operates the express and short-range flights for American out of DCA.[5] [Dkt. No. 34-1], Foose Decl. ¶¶ 3, 4. Piedmont and American employees have common work areas, and share the space reserved for rest periods and meal breaks. Id.; [Dkt. No. 34-2], Nobrega Dep., at 52:11-18. Piedmont invited Nogrega to a group interview session and new-hire orientation on March 11, 2019. [Dkt. No. 34-2], Nobrega Dep., at 67:10-70:9. Piedmont then invited Nobrega and the other candidates who passed a written test to complete an application and new hire paperwork to become conditional hires. Id. at 70:4-71:2. Those individuals were not guaranteed a position until a successful completion of a required background check—including reference checks, drug screening, approval to receive their ID Badge containing airport security credentials, and completion of the Ramp Agent Training. Id. at 70:25-71:19, 78:16-20.

During the new-hire orientation session on March 11, 2019, Nobrega approached Sean Irick, a trainer for Piedmont whom Nobrega had seen previously in the shared American and Piedmont employee lounge. Id. at 52:18-54:20, 88:10-90:4, 113:23-25. Nobrega wanted to explain to him why she was applying for the position with Piedmont and her termination from American, but Irick allegedly cut her short and stated that once her background check came back

---

[5] Piedmont was a wholly-owned subsidiary of US Airways Group until 2013 when US Airways and American merged, at which point Piedmont became a wholly-owned subsidiary of American Airlines Group. [Dkt. No. 34-1], Foose Decl. ¶ 3.

4

clear, that would be all that mattered. Id. at 88:15-89:4, 90:5-91:14. Irick does not participate in, or have authority over, the interview process or the hiring or firing of any employee. [Dkt. No. 34-1], Foose Decl. ¶ 10.

On March 21, 2019, Lisa High ("High"), a regional administration/training department manager for ground handling at DCA, emailed Twanita Dozer ("Dozer"), a recruiter for Piedmont. In her email, High stated:

> I see we are processing an AA employee that was terminated, [sic] I have heard some rumors as to why she was terminated. I [sic] seems she was there quite a while before being terminated and this concerns me. I have some emails into Management at mainline. I know it takes a lot to be terminated with them after probation.

[Dkt. No. 34-1], Foose Decl. ¶ 7, Ex. 2. In a later email, High stated that "We do not want this person working for us, she has been involved in at least two physical altercations while working with Mainline. MWAA police had to handle the situations and badge was taken." Id. After receiving input from Vice President of Human Resources Michelle Foose ("Foose"), Manager of Human Resources Rick E. Miller, and Director of Human Resources Stephen Monserrate, Piedmont decided to withdraw its conditional offer of employment to Nobrega. Id. ¶ 7, Ex. 2. On March 22, 2019, Dozier called Nobrega and informed her that Piedmont had changed its mind about offering her a job because of her work history with American. [Dkt. No. 34-2], Nobrega Dep., at 110:1-13, 115:6-116:7. Dozier also sent Nobrega a confirmation email summarizing Piedmont's decision, explaining that "[d]ue to your work history with our parent company, we have decided to rescind your employment offer with our company." Id., at 116:10-117:21, 118:11-18, Dep. Ex. 6.

That day, Nobrega called Human Resources Manager Sharon Custis ("Custis"), who confirmed that Piedmont had withdrawn the offer because of Nobrega's employment history with American. Id., at 135:16-137:14. Nobrega then telephoned Foose to inquire about her

5

employment status. Id. at 137:15-23. Nobrega admitted to Foose that she made the comment "this is America, not Africa" during the December 19, 2018 altercation, and Foose informed Nobrega that the decision to not proceed with her employment would stand. Id. at 147:5-48:17. No Piedmont employees mentioned Nobrega's race, national origin, or age during their telephone conversations with her. Id. at 104:17-105:1, 115:6-16, 149:7-18. Nobrega admits that she does not know if any of those individuals were aware of her race, national origin, or age. Id. at 105:2-10, 114:15-115:5, 137:9-14, 148:21-149:2, 149:15-18.

### B. Procedural History

On September 5, 2019, plaintiff, represented by the same counsel who represented her in the litigation against American, filed this lawsuit in the United States District Court for the District of Maryland. [Dkt. No. 1]. On January 31, 2020, the complaint was transferred to this district after plaintiff consented to transfer of venue. [Dkt. No. 15]. On February 7, 2020, plaintiff filed an Amended Complaint. [Dkt. No. 16]. The Amended Complaint states that plaintiff timely filed a Charge of Discrimination with the Arlington Human Rights Commission and contemporaneously filed with the U.S. Equal Employment Opportunity Commission ("EEOC") on June 14, 2019. Id. ¶ 6. On June 20, 2019, a Notice of Right to Sue was issued by the EEOC. Id.

Defendant has filed a Motion for Summary Judgment with a Roseboro notice, [Dkt. Nos. 33–35], plaintiff has filed what amount to two oppositions and one sur-reply, [Dkt. Nos. 37, 38, 42],[6] and defendant has filed a reply. [Dkt. No. 40]. Finding that oral argument will not assist the decisional process, defendant's motion will be decided on the papers submitted.

---

[6] Because of plaintiff's pro se status, the Court has considered all of her filings.

6

## II. DISCUSSION

### A. Standard of Review

In the Fourth Circuit, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Norfolk S. Ry. Co. v. City of Alexandria, 608 F.3d 150, 156 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56). A genuine dispute about a material fact exists if "after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012). All inferences must be made in favor of the nonmoving party. Hawkins v. McMillan, 670 F. App'x 167, 168 (4th Cir. 2016).

### B. Analysis

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(l). A plaintiff may establish a Title VII claim through either direct or indirect evidence of discrimination. Direct evidence is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." Johnson v. Mechs. & Farmers Bank, 309 F. App'x. 675, 681 (4th Cir. 2009). Indirect claims under Title VII are analyzed under the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–07 (1973). Plaintiff bears the initial burden of establishing a prima facie case of discrimination. Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010); Abilt v. Central Intelligence Agency, 848 F.3d 305, 315 (4th Cir 2017). The elements Nobrega must prove for a prima facie case of discrimination under Title VII are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment than

similarly-situated employees outside protected class" or that "the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Jones v. Constellation Energy Projects & Servs. Grp., Inc., 629 F. App'x 466, 468 (4th Cir. 2015) (quoting Adams v. Trs. of the Univ. of N.C.–Wilmington, 640 F.3d 550, 558 (4th Cir. 2011)).

If the plaintiff establishes a prima facie case, the employer then has the burden to provide a legitimate non-discriminatory reason for the adverse employment action. Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 726 (4th Cir. 2019). The "explanation provided must be legally sufficient to justify a judgment for the defendant," but defendant "need not persuade the court that it was actually motivated by the proffered reasons." Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254 (1981). If a defendant offers admissible evidence sufficient to meet his or her burden of production, the burden shifts back to plaintiff to prove discrimination and "that [defendants'] proffered justification is pretextual." Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004). A plaintiff can do so by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of . . . discrimination." Id. at 336 (quotation omitted).

Because Nobrega alleges no direct evidence of discrimination that resulted in Piedmont's decision to terminate her, her claim must be analyzed under the McDonnell Douglas burden-shifting framework. During her deposition, for which plaintiff still had counsel, plaintiff identified five Piedmont employees who had been fired either by American or some other airline, yet were hired by defendant, as comparators. Defendant argues that the proffered comparators do not satisfy prong four of a prima facie claim because none of the people Nobrega identifies as

8

comparators are similarly situated.[7] The comparators are:[8] Charles Womley/Coleman ("Womley/Coleman")[9] who is Black and presumed born in the United States, Shante Briscoe ("Briscoe") who is Black and presumed born in the United States, Johntel Brandy ("Brandy") who is Black and presumed born in the United States, Unknown/Winston Bailey ("Bailey")[10] who is Black and presumed Jamaican, and Jovanni Green ("Green") who is Black and presumed

---

[7] Plaintiffs are not required to point to similarly situated comparators to succeed on a discrimination claim, but where a plaintiff has "based [her] allegations completely upon a comparison to an employee from a non-protected class, . . . the validity of [her] prima facie case depends upon whether that comparator is indeed similarly situated." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam).

[8] Defendant correctly points out that Nobrega's descriptions of these people and their work histories are hearsay, as she has provided no sworn statements from any of them and is speculating about the national origin and age of each of them. See, e.g., [Dkt. No. 43-2], Nobrega Dep., at 127:9-12 (Womley/Coleman), 151:21-23 (Brandy), and 162:3-20 (Green). Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted. In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig., 810 F.3d 913, 925–26 (4th Cir. 2016). "[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." Maryland Highways Contractors Ass'n, Inc. v. State of Md., 933 F.2d 1246, 1251 (4th Cir. 1991). Although plaintiff states in her sur-reply that she found it difficult to obtain statements and evidence because of the pandemic and because she "can't get an [sic] written statement because all of these individuals said they would come through for me, but are now afraid of losing their jobs—which I totally understand," [Dkt. No. 42] at 5, while plaintiff was still represented by counsel she had sufficient time to obtain sworn statements or depose these individuals during discovery, or to ask the Court for an extension of the discovery period. Plaintiff now asks the Court to subpoena witnesses, [Dkt. No. 42] at 5, but this is only appropriate at trial. Having failed to gather admissible evidence during discovery, plaintiff cannot rely on inadmissible hearsay evidence and speculative self-serving beliefs to defeat defendant's Motion for Summary Judgment.

[9] Plaintiff originally identified a comparator to Piedmont as "Charles Womley," but Piedmont could not find any record of such person being hired. [Dkt. No. 34-1], Foose Decl. ¶ 8. In her sur-reply, plaintiff states that "Charles Coleman" is the correct name and that "Piedmont was given the incorrect name." [Dkt. No. 42] at 4. Because plaintiff only added this in her sur-reply, defendant has had no opportunity to investigate a "Charles Coleman."

[10] It appears that Nobrega provided Winston Bailey's full name for the first time in her sur-reply; however, Foose states that she directed a search of Piedmont's employment records for Bailey, including any similar names, and did not find anyone with that name ever employed by Piedmont. [Dkt. No. 34-1], Foose Decl. ¶ 8; see also [Dkt. No. 34-2] Nobrega Dep., at 153:11–13 ("I don't know his last or first name, but I know one of the – [Bailey is] one of his names.").

Dominican. Even assuming that all of the five comparators were hired by defendant despite having previously been fired by another employer, Nobrega cannot establish her race claim because each of the purported comparators is her same race.[11] As to her national origin claim, plaintiff has not provided any admissible evidence of these comparators' national origin, other than her own speculations or hearsay evidence.[12] Because hearsay evidence is inadmissible in considering a motion for summary judgment, Nobrega has not met her burden of showing that these individuals were of a different national origin. See Maryland Highways Contractors Ass'n, 933 F.2d at 1251.

Even if Nobrega had provided admissible evidence as to her proposed comparators' national origins, she has not shown that they are similarly situated. A plaintiff is required to show that she is "similar in all relevant respects" to her comparators. Haywood, 387 F. App'x at 359. In assessing comparators, courts assess "the gravity of offenses on a relative scale." Moore v. City of Charlotte, NC, 754 F.2d 1100, 1107 (4th Cir. 1985); see also Ze-Ze v. Kaiser Permanente Mid-Atl. States Regions, Inc., 833 F. Supp. 2d 543, 551 (E.D. Va. 2011) ("[C]ourts look to the relative seriousness of the plaintiff's and the purported comparator's actions, to determine whether those actions are truly similar in degree and kind.").

Nobrega has alleged that Womley/Coleman was employed by US Airways as a customer service agent before the merger of US Airways and American and was fired from US Airways for purported time and attendance issues. He was then hired by Piedmont as a customer service

---

[11] When asked at her deposition about how Piedmont racially discriminated against her given that each of her comparators are her same race, plaintiff stated that in relation to Charles Womley/Coleman, "he was hired and he's black and I'm black and we're almost the same age. And he was born here, that's the only difference, but that's how I'm feeling discriminated against." [Dkt. No. 34-2], Nobrega Dep., at 127:4-8. Accordingly, it appears that plaintiff confuses her racial discrimination claim as a claim for national origin discrimination.

[12] See supra, note 8.

agent before the US Airways merger with American, and is allegedly still employed by Piedmont.[13] [Dkt. No. 34-2], Nobrega Dep., at 118:19-25, 121:1-127:12. Because Womley/Coleman was allegedly fired for time and attendance issues, he is not similarly situated to Nobrega, who was fired for more serious violations of American's Work Environment Policy and Rules of Conduct which involved making racially discriminatory and inappropriate comments to an American vendor during a public altercation after having already been placed on a Last Chance Agreement. Similarly, plaintiff alleges that Briscoe used to work for American as a customer service agent but was fired for time and attendance violations after allegedly being placed on a Last Chance Agreement, and then was hired by Piedmont. Id. at 128:3-132:3. Plaintiff also alleges that Bailey was terminated by Piedmont for tardiness and timecard fraud issues, but then began working for Prime Flight, a baggage handling vendor for Piedmont. Id. at 153:14-158:21. Because time and attendance issues are substantially less serious than the violations for which plaintiff was terminated by American, she has not shown that these purported comparators are substantially similar to her.

Nobrega also points to Brandy, whom she claims was formerly employed by Piedmont and then terminated for not being eligible for a U.S. Customs and Border Protection Customs Seal due to a purported felony conviction. Id. at 111:7-113:18, 151:5-153:7. Brandy was rehired by Piedmont after she was able to obtain her Customs Seal. Id.; see also [Dkt. No. 34-1], Foose Decl. ¶ 9, Ex. 3. Even if plaintiff's evidence of Brandy's employment and criminal history were

---

[13] In her sur-reply, Nobrega provided an unsworn, unsigned "statement" of Charles Coleman purporting to describe other employees of American and Piedmont who had disciplinary issues but remained employed or were rehired. [Dkt. No. 42] at 38 (discussing misconduct by "Devon Burroughs and Devin Davis-Massey, Piedmont employees," "Greg at mainline American Airlines at DCA," and "the case of the gate manager at American Airlines at DCA."). Even if these statements were in fact made by Charles Coleman, they are hearsay, and make no mention of Coleman's employment status or his disciplinary history.

11

admissible,[14] plaintiff's serious misconduct that led to her being fired by American is distinct from the procedural reason for Brandy's termination based on her inability to obtain a Customs Seal required for working at the airport. Finally, Nobrega points to Green, who allegedly worked for US Airways as a ramp agent, was fired for reasons unknown to plaintiff, was hired by Piedmont as a customer service agent, and later applied for and obtained a customer service position with American. [Dkt. No. 34-2], Nobrega Dep., at 159:6-162:24. Because plaintiff does not allege why Green was fired, she cannot show that Green was a similarly situated comparator.

Even if the Court were to find that Nobrega established a prima facie case of discrimination, Piedmont has provided sufficient factual evidence that the decision to terminate her conditional employment was for a legitimate non-discriminatory reason. The record clearly establishes that after learning that Nobrega had recently been fired from its parent airline for engaging in an altercation in which Nobrega used racially discriminatory and incendiary language, Piedmont decided to rescind its offer of conditional employment. To survive a summary judgment motion, a nonmoving party must create a genuine issue of material fact by citing affidavits, deposition testimony, interrogatories, and other admissible evidence in the

---

[14] Plaintiff has provided in her sur-reply what she describes as "Report about Johntel Brandy (evidence)," which appears to be printouts of Brandy's criminal history from a Virginia Judiciary online case information system; printouts showing involuntary termination of Johntel Brandy from what appears to be a Piedmont Airlines record system called "Legacy Apps" and is part of Exhibit 3 provided by defendant in [Dkt. No. 34-1], Foose Decl.; and forwarded emails from Nobrega to herself with cut-off pages of records concerning defendant "Brandy, Joh[cut off]" in Fairfax County General District Court. [Dkt. No. 42] at 21–22, 25–36. Under Federal Rule of Evidence ("FRE") 901, a proponent of evidence must satisfy the requirement of authenticating or identifying an item of evidence by producing "evidence sufficient to support a finding that the item is what the proponent claims it is." None of plaintiff's evidence is self-authenticating, and she has not provided any evidence as to the authenticity of this evidence. Only the printout from Piedmont Airlines has been authenticated by defendant, and it is part of a larger exhibit that also includes a second page stating, "Agent could [indecipherable] to work if issue with Custom and Border Protection can be taken care of." [Dkt. No. 34-1], Foose Decl., Ex. 3.

record; failure to do so can result in entry of judgment in the movant's favor. The Court must "generally consider self-serving opinions without objective corroboration not significantly probative," such that a plaintiff's uncorroborated opinions and statements may be disregarded as irrelevant. Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996). Plaintiff's arguments relying on her beliefs without factual foundation do not create a genuine issue of material fact. See, e.g., [Dkt. No. 38] at 1 (plaintiff arguing that "[t]he motion should be denied because there are a lot of inaccurate interrogatory answer [sic] from the defendant, deposition and summary judgement statements.").[15] To the extent that Nobrega tries to challenge the accuracy and legitimacy of her firing by American, she has already had the opportunity to do so in her unsuccessful lawsuit against American.

> Courts do not
>
> sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination. . . . Our sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.

DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (internal citations and quotations omitted). Accordingly, it is irrelevant whether American or Piedmont mischaracterized the parking lot altercation that led to plaintiff being fired by American, so long as Piedmont relied on

---

[15] Additionally, in her opposition, plaintiff submitted what appears to be an errata to her deposition transcript [Dkt. No. 37]. Although it is dated November 14, 2020, it was received and docketed by the Clerk's office on December 11, 2020. The Federal Rules of Civil Procedure afford a deponent up to 30 days after being notified that a transcript is available in which to review it and make corrections. Fed. R. Civ. P. 30(e)(1). This 30-day deadline is "strictly applied." E.I. Du Pont De Nemours & Co. v. Kolon Indus., Inc., 277 F.R.D. 286, 296 (E.D. Va. 2011). Plaintiff's deposition was taken on October 23, 2020, and her filing is untimely without good cause shown for the delay. Additionally, most of what plaintiff wishes to change is irrelevant, as those pages were not included by defendant in its Motion for Summary Judgment, and otherwise do not affect the Court's analysis of defendant's Motion for Summary Judgment.

plaintiff's termination from American in good faith and did not terminate plaintiff based on discriminatory animus. See Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 903 (4th Cir. 2017) ("If Villa was fired for misconduct she did not actually engage in, that is unfortunate, but a good-faith factual mistake is not the stuff of which Title VII violations are made.").

Nobrega has not shown that Piedmont's proffered explanation was a pretext for discrimination. Nobrega does not dispute that Piedmont's explanation for revoking her conditional offer of employment consistently remained based on the circumstances surrounding her employment with American being terminated. Id. at 115:17-116:7, 117:5-118:18, 135:16-136:20, 148:1-17, Dep. Ex. 6. Piedmont's consistent explanation for why it terminated plaintiff weighs against any finding of pretext. Cf. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 647 (4th Cir. 2002) ("[A]n employer['s] . . . inconsistent post-hoc explanations for its employment decisions is probative [evidence] of pretext."). Nobrega does not allege that Foose, Custis, Dozier, Irick, or anyone involved in Piedmont revoking her conditional job offer made any discriminatory or disparaging remarks about her protected class status, nor does she allege that they were even aware of her race or national origin. Id. at 104:17-105:10, 114:15-115:16, 137:9-14, 148:21-149:2, 149:7-18. Nobrega's reliance on a comment allegedly made by Irick that her prior termination did not matter as long as she passed the background check is unavailing, as there is nothing in the record to indicate that a background check would not include a candidate's employment history, nor was Irick involved in any way in the decision to hire or fire Nobrega. The only other evidence Nobrega relies on is her assertion that other Piedmont employees were hired after being fired by American or US Airways. As discussed above, even if this evidence were admissible, none of the purported comparators were fired for engaging in violations as serious as the one for which Nobrega was fired.

14

Accordingly, Nobrega has failed to produce sufficient evidence from which a reasonable jury could find that the decision to terminate her conditional employment was based on racial or national origin animus. Moreover, defendant has provided sufficient unrebutted evidence from which a reasonable jury could conclude that the reasons given for terminating plaintiff's employment were not pretextual.

Plaintiff's claim under the ADEA similarly fails. Age discrimination claims involve the same burden shifting evidentiary scheme as Title VII cases when there is no proffer of direct evidence, with the exception that Nobrega must prove causation at the prima facie stage under the more stringent "but for" analysis. Gross v. FBL Fin. Serv., Inc., 557 U.S. 167, 177 (2009); see also Arthur v. Pet Dairy, 593 F. App'x 211, 219 (4th Cir. 2015) (collecting cases for the proposition that the ADEA's "but for" standard is more demanding than Title VII's "motivating factor" standard). Nobrega has made guesses as to the ages of her purported comparators but has provided no other evidence of their ages. [Dkt. No. 34-2], Nobrega Dep., at 122:13-17 (Womley/Coleman—"I could suggest around his 50s"), 130:6-7 (Briscoe—"in her late 30s"), 151:21-23 (Brandy—"looked to me like in her late 30s"), 158:14-21 (Bailey—"I would say his late 40s"), 162:21-24 (Green—"I would think her age is, like, in her early 40s"). Nobrega has not alleged that anyone made any derogatory comments about her age. Id. at 104:17-105:10, 114:15-115:16, 149:7-18. Nobrega had the opportunity during discovery to obtain the ages of these comparators but did not, leaving her with no evidence of their age. Because a plaintiff's supposition does not qualify as evidence, she has failed to produce any evidence upon which a reasonable jury could conclude that defendant would not have terminated her conditional employment but-for her age.

## III. CONCLUSION

For the reasons stated above, defendant's Motion for Summary Judgment will be GRANTED by an Order to be issued with this Memorandum Opinion.

Entered this 11th day of May, 2021.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge